UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KALEB S. JOHANSON,

                       Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                   Defendant.

Case No. 3:14-cv-05690-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have

this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the

remaining record, the Court hereby finds that for the reasons set forth below, defendant's

decision to deny benefits should be reversed and this matter should be remanded for further

administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On April 4, 2011, plaintiff filed an application for SSI benefits, alleging disability as of

March 13, 1993. *See* Dkt. 9, Administrative Record ("AR") 12. That application was denied

upon initial administrative review on August 26, 2011, and on reconsideration on November 14,

ORDER - 1

2011. *See id.* A hearing was held before an administrative law judge ("ALJ") on January 24, 2013, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's mother and a vocational expert. *See* AR 29-56.

In a decision dated February 7, 2013, the ALJ determined plaintiff to be not disabled. *See* AR 9-28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 27, 2014, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1-7; 20 C.F.R. § 416.1481. On September 3, 2014, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Dkt. 3. The administrative record was filed with the Court on January 9, 2015. *See* Dkt. 9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity ("RFC"); and (5) in finding him to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the Court agrees the ALJ erred in rejecting the lay witness evidence in the record – and thus in assessing plaintiff's RFC and in finding him to be capable of performing other jobs – and therefore in determining plaintiff to be not disabled. Also for the reasons set forth below, however, while defendant's decision to deny benefits should be reversed on this basis, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by

ORDER - 2

the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Commissioner of Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (*quoting Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 3

1

2      I.      The ALJ's Evaluation of the Lay Witness Evidence in the Record

3              Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must

4      take into account," unless the ALJ "expressly determines to disregard such testimony and gives

5      reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

6      In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

7      germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

8      link his determination to those reasons," and substantial evidence supports the ALJ's decision.

9      *Id.* at 512. The ALJ also may "draw inferences logically flowing from the evidence." *Sample*,

10     694 F.2d at 642.

11             In addition to testifying at the hearing, plaintiff's mother Shawna Jeanne Kyler provided

12     a function report and an additional written statement. Plaintiff argues the ALJ failed to properly

13     evaluate this lay witness evidence. The Court agrees. With respect to Ms. Kyler's testimony, the

14     ALJ found:

15

16             The claimant's mother testified she tries to help [plaintiff] by teaching him
               how to take care of simple things by himself. He participated in special
17             education during school. He does not understand time or money. He avoids
               reading and writing. Medication to treat hyperactivity calms the claimant,
18             allowing improved focus. He functions better with this medication. He
               performs whatever tasks his mother instructs him to do. He watches his
19             cousins repair motorcycles. She cannot give him multiple tasks to perform. He
               must do one task at a time. This testimony is given some weight because it is
20             generally consistent with the record. It shows the claimant experiences some
               mental health symptoms. Medication reduces symptoms. The residual
21             functional capacity [assessment] accounts for symptoms that persist despite
               medication and therapy.
22

23     AR 22. As plaintiff points out, however, Ms. Kyler's testimony describes limitations that would

24     appear to be more severe than those adopted by the ALJ. For example, Ms. Kyler testified that

25     she was "just trying to help" plaintiff "take care of some simple things for himself," that she had

26     to "keep track and deal with all of his appointments" and that he has "a perception problem with

       ORDER - 4

time," where "[d]ays go by, minutes, hours . . . have no meaning . . . to him."[2] AR 44. Ms. Kyler

further testified that in terms of helping her around the house, she has to show or tell plaintiff

how to do something, and that "[i]t has to be one thing at a time" and "[e]ven then it could be

done wrong." AR 48; *see also* AR 49 ("I'll tell him something and he'll forget it."), AR 50 ("It

has to be very simple, very one at a time kind of thing.").

The ALJ assessed plaintiff with the residual functional capacity:

> **. . . to perform a full range of work at all exertional levels but with the**
> **following nonexertional limitations: He must avoid hazardous machinery.**
> **He is limited to simple, entry-level work with reasoning level one or two.**
> **He should learn by demonstration rather than written instructions. He**
> **should not be required to make math calculations. He can have no**
> **interaction with the public. He can have occasional interaction with**
> **coworkers.**

AR 16 (emphasis in original). Although admittedly the limitations the ALJ imposed on plaintiff

here are fairly restrictive, the Court finds those described by Ms. Kyler in her testimony above to

be even more so. Defendant is correct that a job requiring a reasoning level ranging from one to

two is generally consistent with the ability to perform simple, routine and/or repetitive tasks with

a few concrete variables.[3] But according to Ms. Kyler, plaintiff could not keep track of or deal

with appointments, had "a perception problem with time" such it had "no meaning " to him, and

would get things wrong even when shown or told how to do something around the house. This is

---

[2] As an example of this last issue, Ms. Kyler testified that:

> . . . last January his friend looked at him and said, "Gosh, Kaleb, I can't believe we're going to
> be 19 in three months." And he goes, "Am I going to be 19 in three months, mama?" And I said,
> "Yes." And I had to say January, February, March, and explain that, you know, to him. . . ."

AR 44; *see also* AR 48-49 ("[H]e's never fully been able to understand time  . . . All through growing up . . . it was
just something he couldn't grasp.").

[3] *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning to be more consistent
with limitation to simple, routine work tasks); *Meissl v. Barnhart*, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005)
(finding limitation to simple and repetitive tasks to be closer to Level 2 reasoning); *Flaherty v. Halter*, 182
F.Supp.2d 824, 850-51 (D. Minn. 2001) (finding Level 2 reasoning did not conflict with limitation to work
involving simple, routine, repetitive, concrete, and tangible tasks); Dictionary of Occupational Titles, Appendix C.

ORDER - 5

suggestive of difficulty in handling even simple work-related tasks. As such, the Court finds the ALJ's basis for discounting the weight given to Ms. Kyler's testimony to be improper.

The record also contains a June 2011 functional report from Ms. Kyler, which the ALJ addressed as follows:

> The claimant's mother . . . stated the claimant's condition affect his ability to remember, complete tasks, concentrate, understand, follow instructions, and get along with others. His attention span is extremely short. He does not finish tasks. The claimant was attending school. She had to wake him up in the morning, which usually took a long time. She reminded him to take medication. Symptoms disrupted sleep. He had mood swings. He did not handle stress or changes in routine well. He had never prepared a meal. He performed no household chores. He did not drive. He watched television. He visited and conversed with others daily. He attended school. This report is given some weight because it is generally consistent with the record. It suggests the claimant lacks motivation. Inconsistencies weaken the persuasiveness of this report, however. For example, although his mother stated he does not perform household chores, he cared for his grandfather for several months. Although she stated he does not finish tasks, he completed high school. This evidence shows the claimant has the ability to persist, focus, interact with others, and perform various necessary tasks over a prolonged period.

AR 22. As plaintiff points out, however, the record fails to support the ALJ's assertion that his caring for his grandfather and completion of high school conflicts with Ms. Kyler's statement that plaintiff does not perform household chores or finish tasks.  First, the ALJ does not identify, and the Court is unable to find, any specific details about what plaintiff actually did for his grandfather – other than "look[ing] after" and "car[ing] for" him and "staying up all night to make sure that he was safe" (AR 36, 452) – that would indicate he performs household chores. *See also* AR 481, 525. Accordingly, it is not at all clear based on this example that plaintiff does or is able to perform them.

Second, although plaintiff apparently did graduate from high school, it is not entirely clear as to the nature of the diploma he received. *See* AR 34, 462 ("failed his first attempt" at

ORDER - 6

getting "modified diploma"). In addition, plaintiff was in a special education class up until the time he graduated, "had a lot of help from [his] teachers," "fail[ed] at a lot of things," and "barely got through school." AR 34, 45, 49; *see also* AR 228, 230-31. According to Ms. Kyler, furthermore, "[t]hey stopped sending work home early on because it would cause so much frustration with him." AR 49; *see also* AR 462 (""[H]e has not had any homework since grade school."). This evidence suggests that while plaintiff may have graduated high school, the type of diploma he received and what he was required to do in order to graduate is far from clear. As such, it also is far from clear that this evidences shows an ability "to persist, focus, interact with others, and perform various necessary tasks over a prolonged period." AR 22.

Lastly, Ms. Kyler also submitted a written statement, in regard to which the ALJ found:

> The claimant's mother . . . stated the claimant has mental and learning
> disabilities. He received special education. He cannot do anything unless
> shown first. He makes mistakes when performing tasks. He has low self-
> esteem, depression, and grandiose thoughts. His conditions have persisted
> since birth. He has violent fits. This statement is given some weight because it
> is generally consistent with the record. It shows the claimant experiences
> mental health symptoms that reduce functional ability. Consistent with this
> opinion, the undersigned finds the claimant suffers from several mental health
> conditions that significantly affect his ability to perform various work-related
> tasks. The record shows medication reduces symptoms. He is able to perform
> and complete tasks when motivated.

AR 22. Here too, the ALJ failed to provide germane reasons for giving Ms. Kyler's statement only some weight. Although as the ALJ notes there is some indication that medication has been of benefit to plaintiff to a certain extent (*see* AR 19, 460-61 ("He identified his treatment as helpful, and described feeling 'calm, happy, and at peace.'"), it is not at all clear medication has helped in reducing those specific functional limitations Ms. Kyler noted, let alone to a level consistent with the restrictions contained in the ALJ's RFC assessment. *See* AR 227-51. Nor does a reasonable reading of Ms. Kyler's statement indicate plaintiff's problems performing and

ORDER - 7

completing tasks are necessarily due to motivational issues, or if they are, that those issues are unrelated to his mental impairments.

Defendant argues that even if the reasons the ALJ provided for giving less weight to the lay witness evidence from Ms. Kyler are not germane, any such error is harmless[4] since the ALJ properly found plaintiff to be less than fully credible, Ms. Kyler's statements generally mirror those plaintiff provided, and the same clear and convincing reasons the ALJ gave for discounting plaintiff's credibility  "serve to discredit [Ms.] Kyler's statements." Dkt. 16, p. 9 (citing *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012); *Valentine v. Commissioner Social Security Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). It is true that where an ALJ provides clear and convincing reasons for discounting a claimant's subjective complaints, the ALJ may discount lay testimony that is similar thereto for the same reasons. *See Valentine*, 574 F.3d at 694. It is also true that an ALJ's error in failing to discuss lay witness testimony may be harmless where that testimony does not describe any limitations not already described by the claimant, and "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

As discussed above, though, the ALJ did not fail to discuss the lay witness evidence in the record. Nor did the ALJ reject Ms. Kyler's testimony and statements for the same reasons he discounted plaintiff's credibility. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's decision based on evidence ALJ did not discuss). Rather, the ALJ provided a number of

---

[4] *See Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

reasons for rejecting that testimony, none of which were germane. As such, the Court declines to apply the harmless error doctrine here.

II.    The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *See id.* If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's RFC assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. *See id.*

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." *Id.* It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *See id.* However, an inability to work must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

As noted above, the ALJ found plaintiff was limited to simple, entry-level work with reasoning level one or two, should learn by demonstration rather than written instructions, should not be required to make math calculations, and could have no interaction with the public and

ORDER - 9

only occasional interaction with coworkers. *See* AR 16. However, the Court agrees with plaintiff that in light of the ALJ's failure to provide germane reasons for rejecting the lay witness evidence from Ms. Kyler, it is far from clear that the limitations the ALJ adopted completely and accurately describes all of plaintiff's functional limitations, and therefore the ALJ's RFC assessment cannot be upheld at this time.

III.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. *See* AR 51-55. In response to that question, the vocational expert testified that an individual with

ORDER - 10

those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *See id*. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. *See* AR 23-24. Again, however, because of the ALJ's errors in evaluating the lay witness evidence in the record and in assessing plaintiff's RFC, the hypothetical question the ALJ posed cannot be said to completely and accurately describe all of plaintiff's limitations. As such, the ALJ erred in relying on the vocational expert's testimony to finding plaintiff to be not disabled here at step five.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 2nd day of June, 2015.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11